IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD BROOK,

    Plaintiff,                      No. CIV S-09-1364 GEB KJN (TEMP) P

    vs.

J. W. HAVILAND, et al.,

    Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a California prisoner proceeding without counsel, with an action for violation of civil rights under 42 U.S.C. § 1983. Plaintiff has filed a motion for summary judgment.

        On October 9, 2009, plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A. The court found that plaintiff states claims upon which relief could be obtained for First Amendment-based retaliation claims against defendants Miles, Herrera and Singh.[1] On November 24, 2009, the court reconsidered the October 9, 2009 order and ruled that plaintiff also states a First Amendment-based retaliation claim against defendant Cappel. The only claims that survived the screening process are the claims described above. While plaintiff seeks summary

---

[1] While plaintiff identifies a defendant as "Sing" in his complaint, the answer filed on August 18, 2010, identifies the same defendant as defendant "Singh."

1

judgment with respect to "due process," "equal protection," and other claims, plaintiff's motion will only be considered as it pertains to the First Amendment claims which are before the court.

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1  In the endeavor to establish the existence of a factual dispute, the opposing party
2 need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
4 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary
5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
6 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
7 committee's note on 1963 amendments).

8  In resolving a summary judgment motion, the court may examine the pleadings,
9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
10 any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
11 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
12 court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
13 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
14 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
15 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
16 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
17 show that there is some metaphysical doubt as to the material facts. . .. Where the record taken
18 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
19 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

20  Prison officials cannot retaliate against inmates for exercising First Amendment
21 rights. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). Retaliation in this context is
22 adverse action taken against an inmate because of conduct by the inmate which is protected by
23 the First Amendment. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).

24  Something more than minimal harm must have resulted from the retaliation. Id. at
25 568 n. 11 (9th Cir. 2005). A chilling effect on the exercise of a plaintiff's First Amendment
26 rights is sufficient harm. Id. at 567-68.

Because a prisoner's First Amendment rights are necessarily curtailed, a successful retaliation claim requires a finding that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

In his complaint, plaintiff alleges defendants Herrera, Singh and Miles retaliated against plaintiff because plaintiff filed prisoner grievances and lawsuits. Plaintiff alleges that as a result of these grievances and lawsuits, defendants either terminated or contributed to the termination of plaintiff's job assignment at the book bindery at plaintiff's prison.

Defendants Herrera, Singh and Miles provide affidavits with defendants' opposition to plaintiff's motion for summary judgment and all three defendants state that at no time did they ever take any adverse action against plaintiff because he filed prisoner grievances or lawsuits. They all indicate, or at least suggest, that plaintiff was removed from his job at the book bindery because it had been determined that plaintiff had a history of escape, because he was not scheduled to be released within twenty years, or both. The job at the book bindery, according to defendants, required special clearance which, in light of the two factors identified above, plaintiff could not obtain. As indicated above, the court must accept these facts as true for purposes of plaintiff's motion for summary judgment.

The evidence presented by plaintiff indicating these defendants did take action against him because of protected activity is, at best, circumstantial. There is no direct evidence of retaliation, e.g. there is nothing in the record indicating any of these three defendants ever threatened adverse action against plaintiff for his engaging in protected activity, nothing suggesting any defendant told any other person they were retaliating or were going to retaliate, and nothing suggesting retaliation is the only rational explanation for plaintiff's position at the book bindery being terminated. Of course, it would be very difficult for plaintiff to establish that

4

he is entitled to summary judgment with respect to a retaliation claim because evidence of retaliation is rarely going to be direct evidence and therefore subject to different interpretations.

      For all of these reasons, the court finds that defendants Herrera, Singh and Miles have established that there is at least a genuine factual dispute as to weather they participated in removing plaintiff from his job at the book bindery in retaliation for his filing grievances and lawsuits.  There is enough evidence that a rational jury could find that the actions of these defendants were based on institution security or at least were not retaliatory.

      Plaintiff alleges defendant Cappel chilled the exercise of plaintiff's First Amendment rights.  Plaintiff indicates that on April 3, 2009, he appeared at a hearing challenging the decision to deny him the position at the book bindery. Compl. at ¶ 29.  At the hearing, plaintiff's request for the necessary "gate pass" was denied. Id.  Plaintiff was told he was denied the pass because he is a life prisoner without a parole date and with a history of escape. Id.  At the hearing, plaintiff asked defendant Singh if he was the only life prisoner being denied a "gate pass" because he did not have a parole date. Id. at ¶ 30.  Singh stated all life prisoners were being denied gate passes. Id.  Plaintiff then alleges as follows with respect to defendant Cappel:

> Facility Captain R.W. Cappel stated at that time that if I pushed the issue the inmates on the yard who lost their jobs would blame me, and "you know what that means."

Complt. at ¶ 31.

      In his affidavit, Cappel essentially admits this but he characterizes the statement as a warning, rather than a threat:

> In response to inmate Brook's statement during the April 3, 2009 ICC hearing (that he would continue to pursue the matter of obtaining reassignment to C side through the inmate grievance process), I advised Brook that inmates with similar case factors to his were already assigned to C side and that if Brook continued to pursue an inmate appeal regarding his C side eligibility, those C side inmate-workers with similar case factors to his would lose their jobs and as a result would blame Brook, which would place Brook's safety at risk.
>
> At the time, I advised inmate Brook of the dangers of pursuing his

> inmate appeal on April 3, 2009, I was aware that there were other Close B Custody inmates working on C side, with similar case factors to Brook, who under CSP-Solano's operational procedures, should not have been working there.
>
> The only reason I advised inmate Brook of the dangers of pursuing the issue of obtaining C side eligibility through the inmate grievance process was to warn Brook of the risks that would be presented to his safety. Thus, my sole motivation was to ensure Brook's physical safety.

In light of the forgoing, plaintiff cannot be granted summary judgment as to any retaliation claim against defendant Cappel. The court must accept the evidence provided by Cappel as true and while a jury might find that Cappel's statement about plaintiff pursuing his grievance to be a veiled threat designed to get plaintiff to not engage in protected activity, a jury could also find Cappel's concern was with plaintiff's safety and not the actual filing of the grievance. Again, to be entitled to summary judgment, plaintiff must show that there is not a genuine factual dispute as to whether Cappel threatened plaintiff at the April 3, 2009 hearing. In light of the evidence presented by Cappel, that showing has not been made.

For all of the forgoing reasons, the court will recommend that plaintiff's motion for summary judgment be denied.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's January 31, 2011 motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the

////

1 | District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2 | DATED: June 17, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

broo1364.157