IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Ronald Brook,                          )
                                       )    2:09-cv-01364-GEB-CKD
            Plaintiff,                 )
                                       )
      v.                               )    PROPOSED TRIAL DOCUMENTS
                                       )
V. Singh, M. Miles, R. Cappel,         )
and J. Herrera,                        )
                                       )
            Defendants.                )
_____    )

        Attached are the Court's proposed voir dire questions,
preliminary jury instructions, closing jury instructions and verdict
form. Any proposed modifications should be submitted as soon as
practicable.

   **A. Proposed Closing Jury Instructions**

        In the attached instructions, the Court has attempted to
eliminate unnecessary language and to more closely follow the language
used in the Ninth Circuit Model Civil Jury Instructions and Ninth
Circuit case law upon which they are based. The goal is to "help the
jurors to concentrate on the question[s] at hand." Achor v. Riverside
Golf Club, 117 F.3d 339, 341 (7th Cir. 1997). For example, the attached
instructions do not include Defendants' proposed jury instructions Nos.
19 and 20, which instruct on 42 U.S.C. § 1983 claims generally, since it
is evident that each Defendant acted under color of law at the time

Plaintiff alleges they engaged in retaliatory conduct against him.[1] A court should avoid instructing jurors in "formal terminology . . . suited more to lawyers than to lay deciders" especially in the situation here, where it is undisputed that each Defendant acted under color of law. <u>Achor</u>, 117 F.3d at 341.

Nor is Defendants' proposed jury instruction No. 21 included, which is based upon the Ninth Circuit Model Civil Jury Instruction for causation in § 1983 actions generally, since the attached jury instruction on Plaintiff's First Amendment Retaliation claim ("liability instruction") includes as an element a "but for" standard of causation as prescribed in <u>Ford v. City of Yakima</u>, 706 F.3d 1188, 1193-95 (9th Cir. 2013). <u>See id.</u> at 1193 (stating "[i]n order to establish a claim of retaliation in violation of the First Amendment, . . . the evidence must enable [Plaintiff] to prove that the officers' desire to chill his speech was a but-for cause of their allegedly unlawful conduct").

Further, Defendants' proposed jury instruction No. 23 will not be given in light of the Ninth Circuit's following discussion in <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567, n.11 (9th Cir. 2005):

> If [Plaintiff] had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety.

In accordance with <u>Rhodes</u>, the attached liability instruction requires Plaintiff to prove that a Defendant's adverse action "resulted in more

---

[1]    The October 10, 2012 Pretrial Order does not list as a disputed fact or issue of law whether each Defendant acted under color of law. (ECF no. 97.)

than minimal harm to Plaintiff or would chill a person of ordinary firmness in pursuing activities protected by the First Amendment."

Also, the preliminary jury instructions contain the parties' undisputed facts from the October 10, 2012 Pretrial Order, and the fact that Plaintiff filed a civil rights lawsuit in the United States District Court for the Eastern District of California in June 2004. Since the October 10, 2012 Pretrial Order preserves for trial as disputed facts whether each Defendant acted "in retaliation for [Plaintiff's] grievance and/or <u>lawsuit</u>" it is assumed the existence of Plaintiff's earlier lawsuit is a matter on which the parties agree. (ECF No. 97, 4:4-13 (emphasis added).)

**B. Proposed Verdict Forms**

The attached general verdict form will be used rather than Defendants' proposed special verdict form. See <u>Floyd v. Laws</u>, 929 F.2d 1390, 1395 (9th Cir. 1991) (stating "[a]s a general rule, the court has complete discretion over whether to have the jury return a special verdict or a general verdict").

**C.   Order of Trial**

Notwithstanding paragraph 6 of the April 1, 2013 Supplement to Pretrial Order (ECF No. 110), trial will not be conducted in two phases in light of Defendants' proposed jury instructions and proposed verdict form, which assume trial will be conducted in one phase.

Dated:  May 2, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Ronald Brook, | ) | |
| | ) | 2:09-cv-01364-GEB-CKD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VOIR DIRE |
| | ) | |
| V. Singh, M. Miles, R. Cappel, | ) | |
| and J. Herrera, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Thank you for your presence and anticipated cooperation in the jury selection questioning process we are about to begin. This process concerns the right to a trial by jury, which is a right that the founders of this nation considered an important component of our constitutional system.

The court personnel who will assist me in this trial are on the platform below me. The Courtroom Deputy is Shani Furstenau. She is on the platform below me on my left side. Next to her is the Certified Court Reporter, [_____].

We are about to begin what is known as voir dire. The purpose of voir dire is to ascertain whether you can be a fair and impartial juror on this case. Near or at the end of the process, each

1

party can use a certain amount of what are called peremptory challenges, which excuse a potential juror from sitting as a juror on this case. A potential juror can also be excused for other reasons.

1.    Ms. Furstenau, please administer the oath to the panel.

2.    Counsel, the Jury Administrator randomly selected potential jurors and placed their names on the sheet that has been given to each party in the numerical sequence in which they were randomly selected. Each juror has been placed in his or her randomly-selected seat.

3.    I will ask a series of questions to the jurors as a group. If you have a response, please raise your hand or the number you've been given, which reflects your seat number. Generally, you will be given an opportunity to respond in accordance with the numerical order in which you are seated, with the juror in the lowest numbered seat responding first. If no hand is raised, I will simply state "no response" for the record and then ask the next question. If you know it is your turn to respond to a question, you may respond before I call your name or your seat number, by stating your last name or just your seat number, then your response. That should expedite the process.

4.   This lawsuit concerns Plaintiff's allegations that each Defendant retaliated against him because he filed a civil lawsuit against other prison officials in 2004 and/or because he filed an inmate grievance in which he challenged the denial of his request to participate in a prison self-help class. Pursuing civil rights litigation and filing prison grievances are activities protected by the First Amendment. Therefore, retaliation against Plaintiff for engaging in either or both of these activities violates the First Amendment.

Plaintiff alleges retaliation occurred when:

Defendants Miles and Herrera removed Plaintiff from his book bindery job assignment on January 17, 2007;

Defendant Singh denied Plaintiff clearance to a certain portion of the prison called the "C-side" at a April 3, 2009 hearing; and

Defendant Cappel told Plaintiff at the April 3, 2009 hearing that if he continued to pursue the issue of obtaining C-side eligibility, inmate-workers who loose their jobs as a result would blame Plaintiff.

Each Defendant denies that his action was retaliatory. Each Defendant also contends that his action furthered the legitimate correctional goal of institutional safety and security, and was not motivated by Plaintiff's referenced 2004 lawsuit or inmate grievance.

3

5.   Raise your hand if you have any knowledge of the facts or events in this case or if there is anything about the allegations which causes you to feel that you might not be a fair juror in this case.

6.   Raise your hand if there is any reason why you will not be able to give your full attention to this case.

7.   Raise your hand if you will not be able to decide this case based solely on the evidence presented at the trial or if you are opposed to judging a witness's credibility.

8.   Raise your hand if you would tend to believe the testimony of a witness just because that witness is a law enforcement officer and for no other reason.

9.   Raise your hand if you would tend not to believe testimony of a witness just because that witness is a law enforcement officer and for no other reason.

10.  Raise your hand if you will not apply the law I will give you if you believe a different law should apply.

11.   The evidence and argument portion of the trial should be completed in approximately 3 court days, after which the case will be submitted to the jury for jury deliberation. We will be in trial on Tuesday and Wednesday from 9:00 a.m. until about 5:00 p.m., and on Friday from 10:30 a.m. until 5:00 p.m. But as soon as you begin jury deliberation, you will be expected to deliberate every

4

day, except weekends, from 9:00 a.m. to about 4:30 p.m., until you complete your deliberation.

If you cannot participate as a juror during these times, raise your hand.

12.   Would Plaintiff introduce himself, and indicate any witness that he may choose to call.

13.   Would Defendants' counsel introduce themselves, their clients, and indicate any witness that their clients may choose to call.

Raise your hand if you know or have had any interaction with any person just introduced or named.

14.   Raise your hand if you have ever served as a juror in the past.

State whether it was a civil or criminal case, and state whether the jury reached a verdict, but do not state the actual verdict reached.

15.   Raise your hand if you, any member of your family, or any close friend has ever been employed by a law enforcement agency, including military law enforcement?

Could what you just stated have a bearing on your ability to be a fair and impartial juror in this case?

16.   Raise your hand if you, any member of your family, or any close friend has ever received any special training in law

enforcement, criminal justice or corrections.

Could what you just stated have a bearing on your ability to be a fair and impartial juror in this case?

17. Raise your hand if you have had any other experience or are aware of anything that could have a bearing on your ability to be a fair and impartial juror in this case.

18. Now, I am going to ask you to put yourselves in the position of each lawyer and party in this case. Raise your hand if you have information that you think should be shared before each side is given an opportunity to exercise what are called peremptory challenges.

19. The Courtroom Deputy Clerk will give juror number one a sheet on which there are questions that I want each of you to answer. Please pass the sheet to the juror next to you after you answer the questions. The sheet asks you to state:

Your name and your educational background and the educational background of any person residing with you; and

Your present and former occupations and the present and former occupations of any person residing with you.

6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Ronald Brook,                         )
                                      )   2:09-cv-01364-GEB-CKD
              Plaintiff,              )
                                      )
          v.                          )   <u>PRELIMINARY JURY</u>
                                      )   <u>INSTRUCTIONS</u>
V. Singh, M. Miles, R. Cappel,        )
and J. Herrera,                       )
                                      )
              Defendants.             )
_____       )

Preliminary Instruction No. 1

Ladies and gentlemen:  You are now the jury in this case. It is my duty to instruct you on the law.

You must not infer that I have an opinion regarding the evidence or what your verdict should be from these instructions or from anything I may say or do.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

2

Preliminary Instruction No. 2


I am now going to give you jury admonitions that you must remember. When we take recesses, I may reference these admonitions by telling you to remember the admonitions or something similar to that. You are required to follow these admonitions whether or not I remind you to remember them:

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or the issues it involves during the course of your jury duty. Thus, until the end of the case, or unless I tell you otherwise:

Do not communicate with anyone in any way, and do not let anyone else communicate with you in any way, about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating

with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the Court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.

Third, if you need to communicate with me, simply give a signed note to my courtroom clerk, or to the court reporter if my courtroom clerk is not present, who will give it to me.

Preliminary Instruction No. 3


There are rules of evidence that control what can be received into evidence. When Plaintiff or Defendants' counsel asks a question or offers an exhibit into evidence, and the other party thinks that it is not permitted by the rules of evidence, that party may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Preliminary Jury Instruction No. 4

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

First, arguments and statements by Defendants' counsel and by the Plaintiff, except any testimony given by Plaintiff under oath, are not evidence. Defendants' counsel is not a witness, and the Plaintiff is not a witness except when he testifies under oath. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way Defendants' counsel and the Plaintiff state them, your memory of the facts controls.

Second, questions and objections by Defendants' counsel or the Plaintiff are not evidence. The parties have a duty to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

Third, testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are

6

received only for a limited purpose; if I give a limiting instruction, you must follow it.

Fourth, anything you see or hear when the Court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Preliminary Instruction No. 5


During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time during the trial you cannot hear what is said or see what is shown, let me know so that I can correct the problem.

Preliminary Instruction No. 6


If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes shall be left on the seat on which you are seated.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

Preliminary Instruction No. 7


From time to time during the trial, it may become necessary for me to talk with the parties out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. I may not always grant a party's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

10

Preliminary Instruction No. 8


The parties have agreed to certain facts as having been proved; therefore, I will now state the facts on which no further proof is required.

At all times relevant to this lawsuit, Plaintiff was a Close-B custody inmate housed at California State Prison-Solano, and Defendants were employed by the California Department of Corrections and Rehabilitation at California State Prison-Solano. California State Prison-Solano is hereinafter referenced as "CSP-Solano."

In October of 2006, Plaintiff had been working on CSP-Solano's C-side for approximately 9 years. Of this 9 year period, Plaintiff spent the latter 4 years working in the prison's book bindery. Inmate-workers on the prison's C-side have access to tools, and vehicles frequently access the C-side, driving into and out of the prison.

On October 13, 2006, Plaintiff filed an inmate grievance requesting assignment to a self-help program called the Offender Employment Continuum class. The Offender Employment Continuum class is hereinafter referenced as the "OEC class." The OEC class was located on the C-side, in the same building as the prison book bindery.

11

In November of 2006, Plaintiff's grievance was granted, and Plaintiff was allowed to enroll in the next OEC class. On December 9, 2006, Plaintiff was assigned to the OEC class. On January 13, 2007, after completing the OEC class, Plaintiff was reassigned to his job in the book bindery.

During the time that Defendant Miles worked as Custody Captain at CSP-Solano, any time an inmate was approved for assignments or reassignment to a job on C-side, Miles reviewed the inmate's central file. Before permitting Plaintiff to return to his job at the book bindery, Miles reviewed Plaintiff's central file.

On January 17, 2007, Defendant Herrera removed Plaintiff from his C-side job assignment and recommended that the Institutional Classification Committee review his C-side eligibility. The Institutional Classification Committee is hereinafter referenced as the "ICC." On January 19, 2007, Plaintiff was unassigned from his book bindery job.

On February 1, 2007, Plaintiff attended a Unit Classification Committee hearing to determine his C-side eligibility, and the Unit Classification Committee recommended that Plaintiff be cleared for a C-side assignment. On April 24, 2007, Plaintiff attended another Unit Classification Committee hearing, during which the Unit Classification Committee reiterated its recommendation that Plaintiff be cleared for a C-side assignment.

12

Nearly two years later, on April 3, 2009, Plaintiff attended an ICC hearing to determine his C-side eligibility. Defendants Singh and Cappel served as ICC committee members during that hearing.

The ICC committee informed Plaintiff at the April 3, 2009 hearing that he was denied C-side clearance. After the ICC told Plaintiff of that decision, Plaintiff informed the ICC that he would continue to pursue the matter through the inmate grievance process. At the April 3, 2009 hearing, Cappel told Plaintiff that if he continued to pursue the issue of obtaining C-side eligibility, the C-side inmate-workers who loose their jobs as a result would blame Plaintiff.

At the time of the April 3, 2009 meeting, Cappel knew that there were several Close-B custody inmates, with similar case factors to Plaintiff, working on the C-side.

In its report concerning the April 3, 2009 hearing, the ICC noted that Plaintiff "has been assigned on numerous times [to] the Vocational Program [o]n C-side, without any incidents. Additionally, C-side is protected by the Electric Fence."

Preliminary Jury Instruction No. 9


The Court docket reveals that in June of 2004, Plaintiff filed a civil rights lawsuit in the United States District Court for the Eastern District of California against certain California State Prison-Solano personnel. None of the Defendants in this lawsuit were named as Defendants in Plaintiff's 2004 lawsuit.

You must accept these facts as true.

Preliminary Instruction No. 10

The next phase of the trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Plaintiff will then present evidence, and Defendants' counsel may cross-examine. Then Defendants may present evidence, and Plaintiff may cross-examine.

After the evidence has been presented, the parties will make closing arguments and I will provide further instruction on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Ronald Brook,                          )
                                       )   2:09-cv-01364-GEB-CKD
            Plaintiff,                 )
                                       )
        v.                             )   <u>CLOSING JURY INSTRUCTIONS</u>
                                       )
V. Singh, M. Miles, R. Cappel,         )
and J. Herrera,                        )
                                       )
            Defendants.                )
_____        )

Instruction No. 1


Members of the jury, now that you have heard all the evidence and the arguments of the parties, it is my duty to instruct you on the law that applies to this case. Each of you is in possession of a copy of these jury instructions, which you may take into the jury room for your use if you wish.

It is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies. That means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.

2

Instruction No. 2


When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Instruction No. 3


The evidence you are to consider in deciding what the facts are consists of:

the sworn testimony of any witness;

the exhibits that are received into evidence;

any facts to which the parties have agreed; and

the facts mentioned in the preliminary jury instructions

that were revealed on the Court docket.

Instruction No. 4


Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Instruction No. 5

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

the opportunity and ability of the witness to see or hear or know the things testified to;

the witness's memory;

the witness's manner while testifying;

the witness's interest in the outcome of the case and any bias or prejudice;

whether other evidence contradicted the witness's testimony;

the reasonableness of the witness's testimony in light of all the evidence; and

any other factors that bear on believability.

Instruction No. 6


Along with all other evidence, evidence that a witness has been convicted of a crime, may be considered in deciding whether to believe the witness and how much weight to give to the testimony of the witness. Evidence that a witness has been convicted of a crime cannot be considered for any other purpose.

Instruction No. 7

Plaintiff alleges he was retaliated against by each Defendant in violation of the First Amendment to the United States Constitution. Specifically, Plaintiff alleges each Defendant retaliated against him for filing an earlier civil rights lawsuit in federal court and/or because Plaintiff filed an inmate grievance, in which he sought admission to California State Prison - Solano's Offender Employment Continuum class.

Pursuing civil rights litigation and filing prison grievances are activities protected by the First Amendment. Therefore, retaliation against a prisoner for engaging in either or both of these activities violates the First Amendment. The referenced lawsuit and inmate grievance are hereinafter referenced in this instruction as Plaintiff's "protected activities."

Plaintiff alleges the following conduct was undertaken in retaliation for one or both of his protected activities:

Defendants Miles and/or Herrera removing Plaintiff from his book bindery job assignment on January 17, 2007;

Defendant Singh denying Plaintiff C-side clearance at the April 3, 2009 Institutional Classification Committee hearing; and

Defendant Cappel telling Plaintiff at the April 3, 2009 Institutional Classification Committee hearing that if he continued

8

to pursue the issue of obtaining C-side eligibility, inmate-workers who loose their jobs as a result would blame Plaintiff.

To prevail on his First Amendment retaliation claim against any Defendant, Plaintiff must prove, by a preponderance of the evidence, each of the following elements:

First, that Defendant took adverse action against Plaintiff;

Second, that Defendant's adverse action was taken because of the Plaintiff's protected activity or activities, that is, the adverse action would not have been taken but for Plaintiff's protected activity or activities;

Third, Defendant's adverse action resulted in more than minimal harm to Plaintiff or would chill a person of ordinary firmness in pursuing activities protected by the First Amendment; and

Fourth, Defendant's adverse action did not reasonably advance a legitimate correctional goal.

A threat of harm can be an adverse action, regardless of whether it is carried out, if the Defendant's statements suggest that some form of punishment or adverse regulatory action will follow.

Retaliatory intent can be proved by direct or

9

circumstantial evidence. For example, the proximity in time between a protected activity and an adverse action can be considered as circumstantial evidence of retaliatory intent. A Defendant's demeanor and/or inconsistent behavior towards Plaintiff can also be considered as circumstantial evidence of retaliatory intent.

Whether any action taken by a Defendant reasonably advanced a legitimate correctional goal is evaluated in the light of the deference given to prison officials in the adoption and execution of policies and practices that in their reasonable judgment are needed to preserve discipline and to maintain internal security in a prison.

Instruction No. 8


It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest a party for which your verdict should be rendered.

If you decide that Plaintiff has proved his First Amendment retaliation claim against any Defendant, you must determine Plaintiff's damages. Plaintiff has the burden of proving his damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any harm you find was caused by a Defendant. In determining the measure of Plaintiff's damages, you should consider the nature and extent of the harm.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

11

Instruction No. 9

The law that applies to this case authorizes an award of nominal damages. If you decide that Plaintiff has proved his First Amendment retaliation claim against any Defendant, but failed to prove damages as defined in these instructions against that Defendant, you must award nominal damages. Nominal damages may not exceed one dollar.

Instruction No. 10


If you decide that Plaintiff has proved his First
Amendment retaliation claim against any Defendant, you must
determine if that Defendant's conduct justifies an award of punitive
damages. The purposes of punitive damages are to punish a Defendant
and to deter similar acts in the future. Punitive damages may not be
awarded to compensate Plaintiff.

Plaintiff has the burden to prove, by a preponderance of
the evidence, that punitive damages should be awarded, and, if so,
the amount of any such damages.

You may award punitive damages only if you find that the
Defendant's conduct that harmed Plaintiff was malicious, oppressive,
or in reckless disregard of Plaintiff's rights. Conduct is malicious
if it is accompanied by ill will, or spite, or if it is for the
purpose of injuring Plaintiff. Conduct is in reckless disregard of
Plaintiff's rights if, under the circumstances, it reflects complete
indifference to Plaintiff's safety or rights, or if the Defendant
acts in the face of a perceived risk that his actions will violate
Plaintiff's rights under federal law. An act or omission is
oppressive if the Defendant injures or damages or otherwise violates
Plaintiff's rights with unnecessary harshness or severity, such as
by the misuse or abuse of authority or power or by the taking

13

advantage of some weakness or disability or misfortune of Plaintiff.

        If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the Defendant's conduct.

        You may impose punitive damages against one or more of the Defendants and not others, and may award different amounts against different Defendants.

        Punitive damages may be awarded even if you award Plaintiff only nominal, and not compensatory, damages.

Instruction No. 11


When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Instruction No. 12


A verdict form has been prepared for you. After you have reached unanimous agreement on the verdict, your presiding juror will fill in the form that will be given to you, sign and date it, and advise the United States Marshal's representative outside your door that you are ready to return to the courtroom.

Instruction No. 13


If it becomes necessary during your deliberations to communicate with me, you may send a note through the United States Marshal's representative, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

17

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
Ronald Brook,                    )
                                 )     2:09-cv-01364-GEB-CKD
             Plaintiff,          )
                                 )
         v.                      )     VERDICT FORM
                                 )
V. Singh, M. Miles, R. Cappel,   )
and J. Herrera,                  )
                                 )
             Defendants.         )
_____  )
```

WE THE JURY UNANIMOUSLY FIND THE FOLLOWING VERDICT ON THE SUBMITTED QUESTIONS:

<b><u>(Defendant V. Sing)</u></b>

**Question No. 1:**     Does Plaintiff prevail on his retaliation claim against V. Singh?

Answer:   _____ YES        _____ NO

*(If you answered yes, continue to Question No. 2. If you answered no, next respond to Question No. 5.)*


**Question No. 2:**     What is the amount of damages you award to Plaintiff from V. Singh?

$_____

*(Continue to Question No. 3.)*

1

**Question No. 3:**    Does Plaintiff prevail on his punitive damages claim against V. Singh?

Answer:   _____ YES       _____ NO

*(If you answered yes, continue to Question No. 4. If you answered no, next respond to Question No. 5.)*


**Question No. 4:**    What is the amount of punitive damages you award to Plaintiff from V. Singh?

$_____

*(Continue to Question No. 5.)*


**(Defendant M. Miles)**

**Question No. 5:**    Does Plaintiff prevail on his retaliation claim against M. Miles?

Answer:   _____ YES       _____ NO

*(If you answered yes, continue to Question No. 6. If you answered no, next respond to Question No. 9.)*


**Question No. 6:**    What is the amount of damages you award to Plaintiff from M. Miles?

$_____

*(Continue to Question No. 7.)*


**Question No. 7:**    Does Plaintiff prevail on his punitive damages claim against M. Miles?

Answer:   _____ YES       _____ NO

*(If you answered yes, continue to Question No. 8. If you answered no, next respond to Question No. 9.)*

**Question No. 8:**     What is the amount of punitive damages you award to Plaintiff from M. Miles?

$_____

(*Continue to Question No. 9.*)


**(Defendant R. Cappel)**

**Question No. 9:**     Does Plaintiff prevail on his retaliation claim against R. Cappel?

Answer:     _____ YES         _____ NO

(*If you answered yes, continue to Question No. 10. If you answered no, next respond to Question No. 13.*)


**Question No. 10:**     What is the amount of damages you award to Plaintiff from R. Cappel?

$_____

(*Continue to Question No. 11.*)


**Question No. 11:**     Does Plaintiff prevail on his punitive damages claim against R. Cappel?

Answer:     _____ YES         _____ NO

(*If you answered yes, continue to Question No. 12. If you answered no, next respond to Question No. 13.*)


**Question No. 12:**     What is the amount of punitive damages you award to Plaintiff from R. Cappel?

$_____

(*Continue to Question No. 13.*)

**(Defendant J. Herrera)**

**Question No. 13:**    Does Plaintiff prevail on his retaliation claim against J. Herrera?

Answer:    _____ YES         _____ NO

*(If you answered yes, continue to Question No. 14. If you answered no, please date, sign, and return this verdict.)*

**Question No. 14:**    What is the amount of damages you award to Plaintiff from J. Herrera?

$_____

*(Continue to Question No. 15.)*

**Question No. 15:**    Does Plaintiff prevail on his punitive damages claim against J. Herrera?

Answer:    _____ YES         _____ NO

*(If you answered yes, continue to Question No. 16. If you answered no, please date, sign, and return this verdict.)*

**Question No. 16:**    What is the amount of punitive damages you award to Plaintiff from J. Herrera?

$_____

*(Please date, sign, and return this verdict.)*

Dated this _____ day of May 2013.

_____
                                                    PRESIDING JUROR

4